UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

| | |
|---|---|
| Jessica N.,<br><br>    Plaintiff,<br><br>    v.<br><br>Commissioner of Social Security Administration,<br><br>    Defendant. | Civil Action No. 2:22–cv–86–kjd |

**OPINION AND ORDER**
(Docs. 13, 16)

Plaintiff Jessica N. brings this action pursuant to 42 U.S.C. § 405(g) of the Social Security Act, requesting review and remand of the decision of the Commissioner of Social Security denying her application for Supplemental Security Income (SSI).  Pending before the Court are Plaintiff's motion to reverse the Commissioner's decision (Doc. 13), and the Commissioner's motion to affirm the same (Doc. 16).  For the reasons stated below, Plaintiff's motion is DENIED, the Commissioner's motion is GRANTED, and the decision of the Commissioner is AFFIRMED.

**Background**

Plaintiff was 54 years old on her amended alleged disability onset date of November 13, 2018.  (AR 220.)  She has a college degree in studio art and Russian language and has done some graduate work in Russian.  (AR 77.)  She has worked as a deli clerk, housekeeper, produce clerk/cashier/greeter, bagger, dishwasher, and artist.  (AR 220.)  She lives alone in a trailer that she owns in Lyndon, Vermont.  (AR 72.)  Plaintiff's parents are deceased, and she is estranged from her twin sister.  (AR 78.)

In her application for benefits, Plaintiff alleged that she was disabled due to bipolar disorder, depression, PTSD, personality issues, a brain cyst, and substance abuse disorder (remission). (AR 122.) Plaintiff also has been diagnosed with bilateral carpal tunnel syndrome, de Quervain's tenosynovitis, asthma, and bunions. (AR 69.) Plaintiff's last job prior to applying for SSI was as a deli worker at a local supermarket, a job that ended on July 29, 2018. (AR 72.)

When asked at the administrative hearing which conditions prevented her from working on a sustained basis, Plaintiff responded:

> I've been very depressed the past couple of years. That's been the main thing. I just haven't had the motivation. I've been living alone for the first time. I went through a third divorce. My father and mother passed away. And my twin sister and I have been estranged. I'm not used to living alone and not having emotional support. I was very close to my parents. And I just have had trouble motivating myself.

(AR 78.) She noted that due to those circumstances, she was "probably kind of combative" and "not as agreeable," and was "sure that [she] was hard to get along with." (AR 74.)

Plaintiff asserts that her carpal tunnel syndrome makes it hard for her to work, and she gets "numbness and tingling" if she has "to do any kind of repetitive motion." (AR 79.) In response to the ALJ's question regarding the physical conditions that limited her ability to work, Plaintiff stated that she didn't think she had "anything major." (*Id.*)

Plaintiff filed her application for SSI on November 13, 2018, and later amended her alleged disability onset date to reflect the same. (AR 121, 220.) Her application was denied initially and upon reconsideration, and she timely requested an administrative hearing. On August 27, 2020, Administrative Law Judge (ALJ) Lisa Groeneveld-Meijer conducted a telephonic hearing on the disability application. Plaintiff appeared and testified and was represented by counsel. A vocational expert (VE) also testified at the hearing.

On September 21, 2020, the ALJ issued a decision finding that Plaintiff was not disabled under the Social Security Act from her alleged disability onset date of November 13, 2018 through the date of the decision.  (AR 11–24.)  Thereafter, the Appeals Council denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner.  (AR 1–4.)  Having exhausted her administrative remedies, Plaintiff filed the Complaint in this action on April 21, 2022.  (Doc. 3.)

## **ALJ Decision**

The Commissioner uses a five-step sequential process to evaluate disability claims.  *See Butts v. Barnhart*, 388 F.3d 377, 380–81 (2d Cir. 2004).  The first step requires the ALJ to determine whether the claimant is presently engaging in "substantial gainful activity."  20 C.F.R. § 416.920(b).  If the claimant is not so engaged, step two requires the ALJ to determine whether the claimant has a "severe impairment."  20 C.F.R. § 416.920(c).  If the ALJ finds that the claimant has a severe impairment, the third step requires the ALJ to make a determination as to whether that impairment "meets or equals" an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings").  20 C.F.R. § 416.920(d).  The claimant is presumptively disabled if his or her impairment meets or equals a listed impairment.  *Ferraris v. Heckler*, 728 F.2d 582, 584 (2d Cir. 1984).

If the claimant is not presumptively disabled, the ALJ is required to determine the claimant's residual functional capacity (RFC), which means the most the claimant can still do despite his or her mental and physical limitations based on all the relevant medical and other evidence in the record.  20 C.F.R. §§ 416.920(e), 416.945(a)(1).  The fourth step requires the ALJ to consider whether the claimant's RFC precludes the performance of his or her past relevant work.  20 C.F.R. § 416.920(f).  If the claimant cannot perform her past relevant work, at

the fifth step the ALJ determines whether the claimant can do "any other work." 20 C.F.R. § 416.920(g). The claimant bears the burden of proving his or her case at steps one through four, *Butts*, 388 F.3d at 383; and at step five, there is a "limited burden shift to the Commissioner" to "show that there is work in the national economy that the claimant can do," *Poupore v. Astrue*, 566 F.3d 303, 306 (2d Cir. 2009) (clarifying that the burden shift to the Commissioner at step five is limited, and the Commissioner "need not provide additional evidence of the claimant's [RFC]").

Employing this sequential analysis, ALJ Groeneveld-Meijer first determined that Plaintiff had not engaged in substantial gainful activity since November 13, 2018, her amended alleged disability onset date. (AR 14.) At step two, the ALJ found that Plaintiff had the following severe impairments: bipolar I disorder, anxiety disorder,[1] and carpal tunnel syndrome. (*Id.*) The ALJ also noted that Plaintiff had been diagnosed with asthma, but because it was "well controlled on her treatment regimen," the ALJ found "no evidence that it results in more than a minimal work related limitation and thus, it is determined to be nonsevere." (*Id.*) The ALJ also acknowledged Plaintiff's alleged disability stemming from a bunion on her left foot, but found that Plaintiff's "hearing testimony regarding limitations related to this impairment" were not "consistent with either the nature of her treatment over the relevant period" or her own "descriptions regarding her activities of daily living." (*Id.*) Additionally, the ALJ acknowledged Plaintiff's substance use disorder but found it to be a non-severe impairment because Plaintiff

---

[1] The ALJ explained that she comprehensively considered the full range of Plaintiff's mental impairments:

> [I]n addition to the mental impairments listed as severe, a number of other diagnoses appear in the record. The undersigned is cognizant of the substantial overlap in symptomology between different mental impairments, as well as the inherently subjective nature of mental diagnoses. Accordingly, the claimant's psychological symptoms and their effect on her functioning have been considered together, instead of separately, regardless of the diagnostic label attached.

(AR 15.)

had "been sober since approximately June 2019" and there was no evidence that it caused more than a minimal work-related limitation. (AR 15.) At step three, the ALJ determined that none of Plaintiff's impairments, alone or in combination, met or medically equaled a listed impairment. (AR 15–18.)

Next, the ALJ determined that Plaintiff had the RFC to perform "light work" as defined in 20 C.F.R. § 416.967(b), with the following additional limitations:

> [Plaintiff] should never climb ladders, ropes, or scaffolds. [Plaintiff] can only perform work that does not include concentrated exposure to fumes, odors, dusts, gases, or poorly ventilated areas. She can never have concentrated exposure to extreme temperatures or humidity. [Plaintiff] can frequently handle. She can perform only routine, simple work with no fast pace, (such as belt paced, timed work, or work involving strict quotas) and including only few, if any, changes day to day. She is capable of only occasional, brief interactions with coworkers and supervisors on shift.

(AR 18.) Given this RFC, the ALJ found that Plaintiff was able to perform her past relevant work as a deli cutter/slicer as it is generally performed in the national economy. (AR 24.) The ALJ found that this work met the standard for past relevant work under 20 C.F.R. § 416.965 because her income met the substantial gainful activity requirement, her time on the job was adequate to learn how to do the work, and the work was performed in the last fifteen years. (*Id.*) The ALJ concluded that Plaintiff had not been under a disability from the amended alleged onset date of November 13, 2018, through the date of the decision. (*Id.*)

## Standard of Review

The Social Security Act defines the term "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A person will be found disabled only if it is determined that his "impairments are of such severity that he

5

is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

In considering the Commissioner's disability decision, the court "review[s] the administrative record *de novo* to determine whether there is substantial evidence supporting the . . . decision and whether the Commissioner applied the correct legal standard." *Machadio v. Apfel*, 276 F.3d 103, 108 (2d Cir. 2002) (citing *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000)); *see* 42 U.S.C. § 405(g). The court's factual review of the Commissioner's decision is thus limited to determining whether "substantial evidence" exists in the record to support such decision. 42 U.S.C. § 405(g); *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991); *see Alston v. Sullivan*, 904 F.2d 122, 126 (2d Cir. 1990) ("Where there is substantial evidence to support either position, the determination is one to be made by the factfinder."). "'Substantial evidence' is 'more than a mere scintilla;' it is 'such relevant evidence as a reasonable person might accept as adequate to support a conclusion.'" *Rivera*, 823 F.2d at 967 (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *Poupore*, 566 F.3d at 305.

The substantial evidence standard is "very deferential," and the Commissioner's findings of fact must be upheld unless "a reasonable factfinder would *have to conclude otherwise*." *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (internal quotation marks omitted); *see Sesa v. Colvin*, 629 F. App'x 30, 31 (2d Cir. 2015). Nonetheless, in its deliberations, the court should bear in mind that "the Social Security Act is a remedial statute to be broadly construed and liberally applied." *Dousewicz v. Harris*, 646 F.2d 771, 773 (2d Cir. 1981).

6

## **Analysis**

Plaintiff asserts that this case is "somewhat unusual" because the Commissioner's alleged error "does not involve any weighing of the evidence." (Doc. 13 at 1.) Rather, Plaintiff contends that she is entitled to benefits because the ALJ "simply forgot to complete the legal analysis of whether Plaintiff's three-month stint as a deli slicer counts as substantial gainful activity." (*Id.*) According to Plaintiff, "[i]f that analysis is completed, the job clearly does not qualify as substantial gainful activity" (*id.*) and should be deemed an "unsuccessful work attempt" (*id.* at 5). Under the regulations, if the job in question is determined to be an "unsuccessful work attempt," it does not constitute "substantial gainful activity" and therefore will not be considered past relevant work. *See* 20 C.F.R. § 416.974(c). Assuming the deli slicer job is not past relevant work, Plaintiff further contends that the Medical Vocational Rules compel a finding of disability at step five of the sequential framework. Specifically, she asserts that after a person attains 55 years of age (which Plaintiff did in 2019), the regulations direct a disability finding for a claimant with a high school education and unskilled work background who is restricted to light work. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 2, Rule 202.04.

The Commissioner responds that Plaintiff has not satisfied the regulations' requirements to deem the deli slicer job an unsuccessful work attempt. (Doc. 16 at 1.) According to the Commissioner, substantial evidence supports the ALJ's finding that Plaintiff's deli work constituted past relevant work. (*Id.* at 2.) Further, in the Commissioner's view, the Court should not find Plaintiff disabled as of her 55th birthday because "the sequential analysis never shifted from step four to step five because [Plaintiff] ha[d] not met her burden to show that she could not do her past relevant work as a deli slicer." (*Id.* at 14.)

As explained below, the Commissioner applied the correct legal standard at step four of the sequential evaluation and substantial evidence supports the ALJ's conclusion that the Plaintiff is capable of performing past relevant work as a deli slicer.

**I.      Substantial evidence supports the ALJ's finding that Plaintiff's work as a deli slicer was properly considered past relevant work.**

A claimant has relevant work experience when the work "was done within the last 15 years, lasted long enough for [the claimant] to learn to do it, and was substantial gainful activity." 20 C.F.R. § 416.965. The Commissioner primarily considers a claimant's earnings in determining whether a claimant's work activity constitutes substantial gainful activity. 20 C.F.R. § 416.974(a)(1). In this case, Plaintiff does not dispute that her earnings from the deli slicer job exceeded the amount required to demonstrate substantial gainful activity. (Doc. 13 at 3–4.) Nevertheless, she contends that the ALJ erred in considering the deli slicer job to be work performed at the substantial gainful activity level because it was an unsuccessful work attempt. Under the regulations, a claimant has not performed substantial gainful activity "if, after working for a period of 6 months or less, [the claimant was] forced by [her] impairment to stop working or to reduce the amount of work [she does] so that [her] earnings from such work fall below the substantial gainful activity earnings level." 20 C.F.R. § 416.974(c)(1).

To demonstrate that work activity was an "unsuccessful work attempt," a claimant must first show that there was a significant break in the continuity of her work *before* the Commissioner will consider the claimant "to have begun a work attempt that later proved unsuccessful." 20 C.F.R. § 416.974(c)(2). A "significant break in the continuity" of work means that the claimant was "out of work at least 30 consecutive days." *Id*. Importantly, the claimant must have stopped working or reduced her work and earnings below the earnings level for substantial gainful activity "because of [her] impairment." *Id*. Second, the claimant must

8

show that she returned to work for a period of six months or less. *Id*. § 416.974(c)(3). Finally, she must also demonstrate that she stopped working or reduced her earnings below the substantial gainful activity level "because of [her] impairment." *Id.*; *Paris F. v. Comm'r of Soc. Sec.*, 20-CV-6724S, 2022 WL 2092904, at *4 (W.D.N.Y. June 10, 2022) (explaining that "[a]n unsuccessful work attempt is one that involves work of six months or less that ceases or reduces *due to the claimant's impairments*" (emphasis added)).

Plaintiff asserts that there was the requisite "significant break in the continuity of [her] work" because she "has not earned at the level of [substantial gainful activity] at any time in the fifteen years prior [to] working as a deli slicer." (Doc. 13 at 5 (citing AR 98).) Additionally, she contends that she is "impaired in her ability to get along with coworkers and supervisors due to her medical conditions," and thus her employment history and termination as a deli slicer after less than six months on the job are directly related to her underlying impairments. (*Id.* at 6 (citing AR 129, 147).) Accordingly, Plaintiff asserts that her job as a deli slicer was an unsuccessful work attempt—not substantial gainful activity—and thus cannot qualify as past relevant work experience.

The Court next considers whether the deli slicer job should have been deemed an unsuccessful work attempt under the regulations.

### A. Plaintiff's Work Experience Prior to the Deli Slicer Job

Plaintiff testified that she has "had at least six jobs in the last two years, and they have all had a similar pattern." (AR 74.) As Plaintiff described her work history:

> They would start out okay, but after a few weeks, my coworkers and supervisors would change. They would stop sharing tips with me. They would say weird things. Eventually the manager would turn against me. I would try to hold on with my fingernails. And generally, I would either quit or get fired after three to six months.

(*Id.*)  Plaintiff asserts that this pattern is related to her underlying medical impairments and inability to get along with her coworkers.  (Doc. 13 at 6.)

Prior to Plaintiff's employment as a deli clerk, she was a bagger at Hunger Mountain Collaborative between October 2016 and October 2017 (AR 323), a housekeeper at Capitol Plaza between December 2016 and June 2017 (AR 329), and a housekeeper at Maplewood Limited of Montpelier between July 2017 and January 2018 (AR 326–27).  She worked as a grocer and at a pizza shop in 2015 and 2016.  (AR 314.)  Plaintiff worked as a deli clerk from April 23, 2018 until July 30, 2018.  (AR 332.)

Sonia Keene, Plaintiff's supervisor at Hunger Mountain Collaborative, reported that Plaintiff was "a great worker for a long time and then she started calling out or not showing for every shift."  (AR 324.)  Ms. Keene generally found that Plaintiff did not have problems with learning her job duties; accepting instructions and criticism; cooperating with coworkers as required; and not disrupting others.  (AR 323–24.)  Ms. Keene reported that Plaintiff ended her employment with Hunger Mountain when she "did not sign back up" at the end of her six-month term.  (AR 324.)  Plaintiff's supervisor at Maplewood Limited of Montpelier recorded that generally Plaintiff had no problems in all the same vocational areas.  (AR 326–27.)  She had no problems cooperating with her coworkers.  (AR 326.)  The manager stated that Plaintiff left the job because of "no call no show."  (AR 326.)  Ginger Beauregard, Plaintiff's supervisor at Capitol Plaza, similarly noted that Plaintiff left that job because of "no call/no show."  (AR 329.)  Ms. Beauregard also did not report that Plaintiff had any issues interacting with coworkers, or any other issues regarding the necessary vocational skills for the job.  (AR 329–30.)

Other evidence in the record undermined Plaintiff's claim that she had difficulties getting along with coworkers and supervisors.  The ALJ reasonably considered that Plaintiff had

"engaged in a number of social situations over the relevant period," which suggested no more than a mild limitation in her ability to interact with others. (AR 16.) For example, the ALJ found, and the record supports, that Plaintiff went to AA meetings, was active in her local art community and attended group activities in her community. (AR 20, 733, 786, 1023.)[2] In addition to the substantial evidence demonstrating that Plaintiff did not stop working her previous jobs because of her claimed impairment, i.e., difficulty interacting with others, Plaintiff's testimony before the ALJ appeared to undermine the claim that her impairments prevented her from working.

Plaintiff testified that she did not "want a full-time job" because she would not "be able to do [her] artwork with a full-time job." (AR 101.) In Plaintiff's words, "with the security of a minimum income, [she] believe[s], in [her] remaining years, that [she] could realize some of [her] creative potential." (AR 117.) Considering this testimony and the other record evidence described above, the ALJ reasonably concluded that the testimony "suggests that there are reasons other than limitations related to claimant's medically determinable impairments preventing the claimant from pursuing full-time work." (AR 20.)

Plaintiff has not shown that, prior to the claimed unsuccessful work attempt as a deli slicer, any significant break in the continuity of her work was due to her mental impairments.

---

[2] The ALJ also reviewed the treatment notes of Plaintiff's providers and determined that Plaintiff has not had difficulty interacting with them. (AR 16.) The records the ALJ relied upon support this conclusion. The ALJ noted that Plaintiff's psychiatric nurse practitioner found marked limitations in her ability to get along with coworkers. (AR 860; AR 22). The ALJ ultimately found this opinion to be unpersuasive because it was inconsistent with the provider's own treatment notes and with the other record evidence. (AR 23.) Plaintiff does not challenge this conclusion.

### B. The record does not support Plaintiff's claim that she stopped doing the deli slicer job due to her mental impairment.

Plaintiff testified that she left the deli slicer job because she "had trouble getting along with [her] coworkers." (AR 73.) As the ALJ noted, however, Plaintiff's testimony suggested that it was not so much a question of Plaintiff's inability to interact well with others that caused her to stop working than it was the general nature of that particular workplace. Plaintiff testified that the deli was "known as a difficult place to work," "had a bullying atmosphere," had "a very high turnover," and "[a] lot of people would only last two or three days." (AR 73.) Plaintiff's supervisor stated that Plaintiff was terminated after a confrontation with a coworker (AR 332), but the supervisor did not indicate that Plaintiff exhibited a general inability to get along with coworkers or supervisors. She indicated only that Plaintiff had "some difficulty" cooperating with coworkers. (*Id*.) This one incident contrasts sharply with the opinions of other previous employers that Plaintiff was capable of interacting with others. Substantial evidence supports the ALJ's conclusion that, notwithstanding the one confrontation at the deli, Plaintiff retained the "ability to interact appropriately in a wide range of social settings." (AR 20).

Plaintiff asserts that "all medical sources agree that [she] is impaired in her ability to get along with coworkers and supervisors, and thus the reason she lost [the deli slicer] job is also related to her impairment." (Doc. 13 at 6.) On this point, however, the Court agrees with the Commissioner that the state agency psychologists opined that Plaintiff had a work-related restriction related to her ability to work with coworkers, but they did not conclude that Plaintiff was unable to work with others. *See* AR 129 (Dr. Shapiro concluding that Plaintiff should not have frequent or intense social interaction with coworkers and supervisors, but she could engage in routine social interaction with coworkers and supervisors); AR 147 (same conclusion by Dr. Petty). The ALJ incorporated this limitation into Plaintiff's RFC (AR 18) and included the

12

limitation in the hypothetical posed to the VE. (AR 98–100.) The VE concluded that Plaintiff could do her past work as a deli slicer. (AR 100.)

### C. Plaintiff's Claim That the ALJ Failed to Consider Whether the Deli Slicer Job Was an Unsuccessful Work Attempt

Plaintiff contends that the ALJ committed reversible error by not explicitly considering whether Plaintiff's deli slicer job was an unsuccessful work attempt under the regulations and therefore not substantial gainful activity. She asserts that the Commissioner's arguments on the unsuccessful work attempt issue amount to impermissible *post hoc* rationalizations on a question that the ALJ never addressed in the decision. (Doc. 17 at 1–2.)

As noted, a claimant's prior work does not demonstrate an ability to perform substantial gainful activity if, after working for six months or less in the job, the claimant's impairment forced her to stop working. 20 C.F.R. § 416.974(c)(1). The Commissioner will "not rely solely on information from the worker" in determining why her previous employment ended. SSR 84-25, 1984 WL 49799, at *3. Rather, there must be "impartial supporting evidence" either from the claimant's former employer or a medical source. *Id*. If such information is not in the claimant's file, the agency requires "confirmation with the employer." *Id*. Should information from the employer be unavailable or inconclusive, the claimant's physician or another medical source may consider the relevant circumstances and render an opinion on whether the impairment caused the claimant to discontinue work. *Id*. Courts may remand a case on the grounds that the Commissioner did not adequately develop the record on the question whether a claimant's impairment caused her to stop working. *See, e.g.*, *Cheney v. Comm' of Soc. Sec.*, Civil Action No. 5:10-CV-174, 2011 WL 1839785, at *7 (D. Vt. Apr. 19, 2011) (applying now-rescinded SSR 05-02 to remand to the ALJ for further development of the record as to whether the "inability to work with others" caused claimant to stop her previous work, resulting in an

13

unsuccessful work attempt), *report and recommendation adopted*, 2011 WL 1838717 (D. Vt. May 13, 2011).

In *Cheney*, this Court found that the ALJ erred by not further developing the evidence on whether the claimant's past relevant work was an unsuccessful work attempt. *Id*. at *5–7. However, the circumstances justifying the remand were different than those presented in this case. As an initial matter, claimant's counsel raised the "unsuccessful work attempt" issue before and at the administrative hearing. *Id*. at *6. Second, the administrative record suggested that the claimant's mental impairments may have resulted in unsuccessful work attempts. Specifically, a mental health provider commented that the claimant quit a job apparently due to her dislike of her coworkers, and that the claimant was fired from several other jobs after short duration "due to conflict." *Id*. at *7. The claimant's hearing testimony demonstrated her difficulty with criticism and her tendency not to get along with people not long after beginning a job. *Id*. Finally, the claimant noted in her Function Report that she had "problems getting along with family, friends, and others," as she "fight[s], argue[s] nit-pick[s]." *Id*. Given this evidence, the Court remanded for development of the record.

By contrast, the evidence in this case does not call into question the "unsuccessful work attempt" issue such that remand is warranted. First, there is no indication that the record is lacking the necessary evidence relevant to the issue. For example, the record contains employer questionnaires and mental health treatment records. *See* SSR 84-25. In addition, counsel did not appear to raise the unsuccessful work attempt issue at the administrative hearing. Most importantly, as discussed above, although Plaintiff lost her deli slicer job due to a confrontation with a coworker, considering the record evidence as a whole—including the hearing testimony, the employer assessments, and the medical evidence—substantial evidence supported the ALJ's

conclusion that Plaintiff's claimed difficulty interacting with others was not the reason she stopped working. Even assuming that the ALJ should have conducted an "unsuccessful work attempt" analysis, the failure to do so was harmless because the record does not contain "impartial supporting evidence" warranting such an analysis. *See, e.g.*, *Lagorio v. Saul*, 565 F. Supp. 3d 147, 151 (D.N.H. 2021) (finding harmless ALJ's failure to make an unsuccessful work attempt determination because the record lacked the requisite "impartial supporting evidence").

### D. Plaintiff's Ability to Perform Past Relevant Work

In her RFC determination, the ALJ notes Plaintiff's testimony that she has had difficulty interacting with coworkers in the past. (AR 18.) However, the ALJ concluded that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." (AR 19.) The ALJ's conclusion that Plaintiff is "capable of only occasional, brief interactions with coworkers and supervisors on shift" is consistent with Plaintiff's managers' reports and Plaintiff's description of her own capabilities. (AR 18.)

> Plaintiff reported her daily activities:
>
> I make my bed, and I sweep the floor. I do the dishes. I feed my dog. I do make my dog's food from scratch too. I spend a lot of time on Facebook. I've been very lonely, as I said, and my parents have passed. So the social contact I have is on Facebook. So I do, I probably spend three or four hours on Facebook. And I watch YouTube too.

(AR 92.) Plaintiff reported that she had no difficulty grocery shopping twice a week. (AR 92–93.) Prior to COVID-19, Plaintiff played with a dulcimer group every two weeks. (*Id.* at 93.) Plaintiff testified that she walks her dog in the morning and afternoon, she started a community garden at the trailer park where she lives and has been enjoying gardening and loves to cook certain foods from scratch. (AR 80.) At step four, the burden is on the claimant to show that she

15

is unable to perform her past work, and Plaintiff has not met that burden. *See Balsamo v. Chater*, 142 F.3d 75, 80 (2d Cir. 1998). Substantial evidence in the record supports the ALJ's step four finding that Plaintiff's deli slicer job was past relevant work and that she would be able to perform this work as it is generally performed in the national economy. *See Rivera*, 923 F.2d at 967; *Brault*, 683 F.3d at 448.

II. **Whether the Court Should Find Plaintiff Disabled as of Her 55th Birthday on September 28, 2019 and Remand for Benefits**

Plaintiff contends that if Plaintiff's deli slicer job is not past relevant work, then she has no past work. She further notes that the VE only identified unskilled work in response to the ALJ's hypothetical questions as to what work she might be able to do with the assessed limitations. Plaintiff asserts that once she turned 55 years of age on September 28, 2019, the regulations direct a finding of disability. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 2, Rule 202.04 (directing a decision of disabled for a person of "advanced age," who is a high school graduate or more, limited to light work, and has either unskilled or no previous work experience). Therefore, Plaintiff requests that the Court conclude that she is disabled and remand her case for calculation of benefits. (Doc. 13 at 6–7.)

Plaintiff's argument is premised on the conclusion that the deli slicer job was not past relevant work. As discussed above, substantial evidence supports the ALJ's conclusion that Plaintiff retained the residual functional capacity to do the deli slicer job. Given that Plaintiff has not sustained her burden to demonstrate that she is unable to do her past relevant work, the ALJ concluded the analysis at step four and was not required to undertake a step-five analysis of the Medical-Vocational Guidelines.

Accordingly, the Court declines to find Plaintiff disabled at step five of the sequential evaluation process.

## Conclusion

For these reasons, the Court DENIES Plaintiff's Motion (Doc. 13), GRANTS the Commissioner's motion (Doc. 16), and AFFIRMS the decision of the Commissioner. The Clerk shall enter judgment in favor of the Commissioner.

Dated at Burlington, in the District of Vermont, this 24th day of October 2023.

<u>/s/ Kevin J. Doyle</u><br>
Kevin J. Doyle<br>
United States Magistrate Judge